**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

DONNA BURNETTE,          )    CASE NO. 1:18-CV-1179
                           )
      Plaintiff,          )
                           )    JUDGE DONALD C. NUGENT
     v.                 )
                           )
                           )
ROBERT WILKIE, Acting Secretary  )    <u>MEMORANDUM OPINION AND</u>
of Veterans Affairs,           )    <u>ORDER</u>
                           )
      Defendant.        )

This matter is before the Court upon a Motion for summary Judgment filed by Defendant, Robert Wilkie, Acting Secretary of Veterans Affairs ("Acting Secretary Wilkie" or "Defendant"). (ECF #26).[1] Plaintiff, Donna Burnette ("Ms. Burnette" or "Plaintiff") timely filed a Memorandum in Opposition (ECF #27) and Acting Secretary Wilkie filed a Reply (ECF #30). After careful consideration of the issues and a full review of the filings and all relevant authority, Defendant's Motion for Summary Judgment is GRANTED.

## I.   **FACTUAL AND PROCEDURAL HISTORY**[2]

Plaintiff Donna Burnette brings this action against her former employer Defendant Robert Wilkie alleging race discrimination, retaliation and hostile work environment in violation of Title

_____

[1] Defendant filed a Motion for Leave to Exceed Page Limitations on May 6, 2019, requesting permission to file a 25-page memorandum in support, which the Court granted on May 7, 2019.

[2] Except as otherwise noted, the factual summary is based solely on the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standard.

VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000 *et seq*. Plaintiff asserts Defendant discriminated and retaliated against her on the basis of race by subjecting her to unfair and inequitable discipline and a hostile work environment. (Compl. ECF #1, ¶ 30-41).

## A. Plaintiff's Employment with the Veteran's Administration Medical Center

Ms. Burnette is an African-American woman who was employed by the Department of Veterans Affairs (the "VA") for over twenty-six years. (Burnette Depo. at 7-8). She began her career as a Pharmacy Technician in September of 1990, later working as a procurement technician and controlled substance technician in or around February 2012, where she worked in that capacity until 2017. (*Id.* at 8). At the time of the allegations raised in the Complaint, Plaintiff worked as a procurement and controlled substances technician at a Community-Based Outpatient Clinic ("CBOC") pharmacy in Parma, Ohio. Plaintiff held this position since February 2012 and worked as a pharmacy technician since September 1990 in Brecksville. (Burnette Depo. at 12-13). When the Brecksville facility closed, Plaintiff chose to transfer to Parma as the location was closer to her home than Defendant's main campus in Wade Park. (*Id.*).

As a procurement and controlled substances technician, Plaintiff was responsible for directing inventory management, ordering medications and supplies for the pharmacy, and filling prescriptions for narcotics and other controlled substances. (Burnette Depo. at 9-10). Additionally, Plaintiff performed tasks required of an outpatient or "filling" pharmacy technician, such as prescription processing under the supervision of a registered pharmacist and staffing the pharmacy intake or pick-up window as assigned. (Shihadeh Decl. ¶ 9, 10). Such tasks included filling prescriptions, assisting customers, filling the ScriptPro robot, which dispensed medication, and assisting the pharmacists when necessary. (Burnette Depo. at 11).

Plaintiff's first-line supervisor, Joseph Severinski ("Mr. Severinski") also served as supervisor at the Parma location to two filling technicians, Sybil Carrion ("Ms. Carrion") and Brandy Spring ("Ms. Spring"), and three pharmacists, Mary Montani, Jennifer Stircula, and Michelle Stutler. (Severinski Depo. at 9). Mr. Severinski also supervised the pharmacy in Lorain in 2012 and 2013. (*Id.*). Plaintiff's second-line supervisor was Edward Maurer ("Mr. Maurer"), Assistant Chief of Pharmacy, who reported to Scott Ober ("Mr. Ober"). Mr. Ober reported directly to Director Susan Fuehrer ("Ms. Fuehrer"). (Burnette Depo. at 15). With respect to the day-to-day atmosphere of the pharmacy, Plaintiff's functional statement describes the environment as "subject to frequent, abrupt, and unexpected changes in work assignments due to shifting demands, priorities, and deadlines, which require the employee to constantly adjust operations under the pressure of continuously changing and unpredictable conditions." (Shihadeh Decl. ¶ 9).

**B.  Plaintiff's Disciplinary History and Complaints**

In 2004, Plaintiff received a 5-day suspension for "unauthorized personal use of the Government mail distribution system" and "Conduct Unbecoming a Federal Employee" when she used pharmacy equipment to mail a personal package without permission. (Shihadeh Decl. ¶ 11, Exhibits 9 and 10). In 2007, she received a 10-day suspension for "Disrespectful Conduct Towards Coworkers" and "Conduct Unbecoming a Federal Employee" when she failed to assist another fellow technician, raised her voice at the technician, and told her she "can go to hell." (*Id.*, ¶ 11).

**1.  Plaintiff's History of Complaints to Supervisors**

Beginning in 2012, Plaintiff alleges that she was subjected to a series of unfair, harassing and discriminatory acts constituting a hostile work environment based on her race, prior EEO activity, and opposition to her colleagues' discriminatory conduct. (Compl. ¶ 12). In August of 2012, Plaintiff first complained to Mr. Severinksi alleging that Ms. Carrion caused "rifts" between

staff, slammed prescriptions down on Plaintiff's computer, and "went on facebook" about her. (Email 8-31-2012). In January of 2013, Plaintiff told Mr. Severinski that Ms. Carrion used up medications without "placing it on the book" for her to re-order, and that Ms. Carrion was uncomfortable using the medications with different expiration dates in the same bottle. (Email 1-10-2013).

On April 10, 2013, Plaintiff emailed her supervisor again, stating: "Joe we have a problem at the Parma site with staff in Pharmacy…I refuse to keep putting up with the trickle-down effects of pharmacist to tech disrespect." (Email 4-10-2013). The following morning, Plaintiff requested a transfer to the Akron facility because she felt that some of the same colleagues who were hostile in Brecksville continued to be hostile at the Parma facility. (Burnette Depo. at 97). Mr. Severinski discussed the request with Mr. Maurer, and Plaintiff was offered a position at the Canton facility, which she declined. (Severinski Depo. at 14).

On May 23, 2013, Plaintiff emailed Mr. Severenski that other technicians did not need to cover the pharmacy window after 12:30 pm, but Plaintiff had to at noon. (Email 5-23-2013). On June 26, 2013, Plaintiff emailed Mr. Severinski again regarding an issue involving batching oxycodone and apologized for being upset. (Email 6-26-2013). Plaintiff expressed she believed the incident was a set-up. Mr. Severinski discussed the episode with the individuals involved and no further action was taken. (Severinski Depo. at 17).

## 2. **August 2013 Robot Incident**

In August of 2013, Plaintiff and Ms. Carrion had an argument regarding the ScriptPro "robot." The robot is a machine utilized by Defendant with capabilities to read a barcode and automatically dispense medication into a vial held by the robot hand gripper. (Severinski Depo. at 22-23). The vial is then set on a conveyer belt to be dispensed to a patient. (*Id*.). On August 15,

2013, Plaintiff was using the robot when Ms. Carrion heard a "ding" sound, indicating that a cell in the robot was depleted. (Burnette Depo. at 47, 49-51). Ms. Carrion turned around and saw Plaintiff retrieving a vial from the robot's gripper arm and then grabbed the vial out of Plaintiff's hand. (Burnette Depo. at 49-50).

A disagreement between the two ensued, during which Plaintiff alleges Ms. Carrion threatened her. (Burnette Depo. at 52-23). Mr. Severinski arrived and suggested both take a lunch break. (Severinski Depo. at 12-22). He later interviewed Plaintiff, Ms. Carrion and everyone else in the pharmacy at the time of the incident in order to "get a comprehensive review of what actually happened from as many viewpoints" as possible. (Severinski Depo. at 30). Those interviewed corroborated that Plaintiff had incorrectly grabbed the vial despite being instructed as to proper handling and ultimately became defensive and yelled at Ms. Carrion. (Severinski Depo. at 32). Mr. Severinski then presented his findings to human resources and his supervisor. (*Id.*).

### 3. September 2013 Incident Involving Pharmacists

On September 19, 2013, pharmacist-in-charge Stircula ("Pharmacist Stircula") asked Plaintiff to assist with a line of patients forming at the check-in and pick-up windows. (Severinski Decl. ¶ 6). Plaintiff contends she did not hear Pharmacist Stircula and thus stayed at her desk without responding. (Burnette Depo.at 67-68). Mr. Severinski testified that Plaintiff had a clear line of vision from her desk and was responsible for keeping an eye on the window in order to jump in if needed. (Severinski Depo. at 41-42). Pharmacist Stircula emailed Mr. Severinski to document the incident. (Severinski Decl. ¶ 6). The following day, pharmacist in charge Stutler ("Pharmacist Stutler") asked Ms. Burnette to assist a patient at the window but Plaintiff refused, indicating that she only had to assist at the window between 12:00 p.m. and 12:30 p.m. (Severinski Depo. at 49).

Following the incident, Mr. Severinski called Plaintiff and reminded her of her responsibility to assist at the window. Plaintiff hung up the phone, believing the conversation had ended and then assisted Pharmacist Stutler. Mr. Severinski and Pharmacist Stutler both documented the incident on a Report of Contact ("ROC"). (Severinski Depo. at 52; Severinski Decl. ¶ 7). In response to the incident, Plaintiff alleged "these people are very mean, vindictive, and harassing and I believe this is in retaliation for sybil's [Carrion's] roc in which there[soc] names was mention" and "[t]hese people want to make me quit and are retaliating against me on a daily basis." (*Id.* ¶ 8). This documentation was provided to human resources. (Severinski Depo. at 53).

Problems continued throughout September of 2013, including a number of incidents between Plaintiff and Ms. Carrion. On September 26, 2013, Severinski held a meeting with the entire pharmacy staff to set expectations, reinforce guidelines, and clarify responsibilities regarding technicians and assisting at the pharmacy window. (Email 9-30-2013; Severinksi Depo. at 54-56). Plaintiff alleged that this meeting took place because Mr. Severinski was offended by her. (Burnette Complaints).

### C. **Plaintiff's Complaints to Maurer and Director Fuehrer**

On October 28, 2013, Plaintiff emailed Mr. Maurer regarding her August 2013 ROC: "Please inform me on the status of the ROC that HR has. Things have not gotten better and it needs to be addressed." (Email 10-28-2013; Burnette Depo. 102). Ms. Burnette emailed Ms. Fuehrer the next day stating, "We have a problem in the parma cboc with sibyl carrion and Donna Burnette please address immediately. Thanks." (Email 10-29-203; Burnette Depo. at 103). The email was sent to employment and labor relations to investigate. (Fuehrer Depo. at 12-13).

In November of 2013, Plaintiff complained that Ms. Carrion "purposely bumped me then very low said excuse me." (Email 11-22-2013). She emailed Ms. Fuehrer again stating that she had over a year of complaints against Ms. Carrion and that she continued to be harassed daily. (Email to Fuehrer 11-25-2013). Plaintiff requested that Mr. Severinski stop Ms. Carrion's behavior, saying she needed to "act according to the conduct rules and be respectful" and "quit trying to avoid her work that is affiliated with me." (Email 11-26-2013). Mr. Severinski responded by discussing the issues with Plaintiff and Ms. Carrion separately and together and told them "You guys need to learn how to work together. You need to have appropriate behavior in the workplace and there's consequences if you can't." (Severinksi Depo. at 37). Plaintiff also informed Mr. Severinski that she believed Ms. Carrion was responsible for causing a flat tire. (Email to Severinski 12-2-2013). VA police were called to investigate the incident and the allegations against Ms. Carrion. After speaking with the parties involved and reviewing surveillance footage, the police could not substantiate Plaintiff's allegations. (Severinski Depo. at 38).

### D. Proposed Suspension

On or around November 27, 2013, Plaintiff received a letter notifying her of a proposed suspension for 21-days based on her: (1) disrespect towards a coworker as a result of her behavior during the robot incident; (2) failure to assist for the September 19, 2013 incident; and (3) insubordination for the September 20, 2013 incident. (Proposed Suspension). Plaintiff was given an opportunity to respond to the proposed suspension by submitting evidence and providing an oral reply. (*Id.*). Her oral reply was heard by John Merkle, then deputy director of the VAMC, and after considering all evidence, Ms. Fuehrer ultimately upheld a 14-day suspension on February 11, 2014. (Fuehrer Depo. at 17).

### E. Plaintiff's AWOL

Workdays at the VA pharmacy began at 8:00 a.m. and ended at 4:30 p.m. (Burnette Depo. at 22). Leave was to be requested in advance and it was a supervisor's prerogative to deny leave based on needs of the pharmacy. (Burnette Depo. at 86; Severinski Depo. at 57). In September of 2013, Defendant stopped allowing the use of annual leave for tardiness. (Email 9-30-2013).

On April 24, 2014 Plaintiff called Mr. Severinksi at 8:05 a.m. to request the day off. On that particular day, out of a staff of seven, two people had already called off prior to Plaintiff and only three people, including Mr. Severinski, were present at work. (Severinski Depo. at 59-60). Mr. Severinski asked Plaintiff to come in for part of the day or assist during lunch, which Plaintiff declined, and Mr. Severinski denied Plaintiff's request. (Email 4-24-2014).

### F. Transfer to Akron and Separation

Plaintiff continued to have conflicts with the pharmacy staff throughout 2013 and 2014, and Mr. Severinski and Mr. Maurer revisited Plaintiff's request for a transfer. (Severinski Decl. ¶ 10). In early 2014, Plaintiff temporarily transferred to a non-pharmacy position in Akron but returned in six months. (Burnette Depo. at 31-22). Issues with pharmacy staff persisted and on November 21, 2016, Mr. Severinski emailed a request to meet with Plaintiff. (Email 11-21-2016). Simultaneously, Plaintiff emailed Mr. Severinski's new supervisor, Timothy Heimann ("Mr. Heimann"), expressing her dissatisfaction with Mr. Severinski's behavior. Plaintiff then sent another complaint to Mr. Heimann, a union representative, Andrea Freeman, EEO coordinator, and Ms. Fuehrer.

In January 2017, Plaintiff transferred to the Akron facility where a filling technician position in a lower pay grade was available. (Burnette Depo. at 89). Plaintiff's attendance issues continued and in March 2017, Plaintiff received a letter proposing removal based on problems

occurring throughout 2016 and 2017. (Shihadeh Decl. ¶ 13). Plaintiff was provided an opportunity to respond and was offered an Abeyance Agreement. (*Id.*). Plaintiff declined and instead chose to retire, effective May 19, 2017. (Compl. ¶ 28).

### G. Plaintiff's EEO History

Plaintiff filed multiple EEO complaints during her employment with Defendant and contends that her claims center around her mistreatment as the only African American employee at Defendant's Parma facility and Defendant's retaliation against her for raising complaints relating to the alleged mistreatment. In 2012, Plaintiff initiated an informal complaint of discrimination related to receiving GS-6 pay for performing GS-7 duties. This complaint was settled on August 1, 2012 and no formal complaint was filed or accepted. (Jindra Decl. ¶ 3(a)). On March 11, 2013, Plaintiff filed a formal complaint of discrimination related to non-selection for Pharmacy Technician position under Vacancy FZ-12-680717-LB. The claim was accepted by the VA's Office of Resolution Management ("ORM") and its investigation was completed on August 6, 2013. On September 15, 2015, an Administrative Law Judge ("ALJ") found no discrimination. A Final Agency Decision was issued on October 1, 2015 and Plaintiff did not file an appeal or federal civil action. (*Id.*).

Giving rise to this litigation, Ms. Burnette filed a formal complaint of discrimination with the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication on May 29, 2014, alleging hostile work environment, race discrimination, and reprisal (Agency No: 200H-0541-2014102509) (the "May 2014 Complaint"). The complaint was accepted by the ORM on June 18, 2014 and its investigation was completed on August 10, 2014. After a hearing on February 6, 2018, an ALJ issued a decision on March 22, 2018 finding that Defendant did not discriminate or retaliate against Plaintiff. On March 19, 2018, the EEOC issued

an Order Entering Judgment and on April 23, 2018, the Agency issued a Final Order accepting and fully implementing the decision of the EEOC Administrative Judge. (Jindra Decl. ¶ 3(b)).

On March 7, 2017, Plaintiff filed a formal complaint of race and age discrimination and reprisal, alleging constructive discharge and hostile work environment based on various events in 2016 and 2017, leading to her separation from the VA (Agency No: 200H-0541-2017100937) (the "March 2017 Complaint). The ORM completed its investigation on September 17, 2017 and a final agency decision finding no discrimination was issued on January 23, 2018. Plaintiff did not file an appeal. (Jindra Decl. ¶ 3(c)).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that +there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Although evidence may be presented in support of a summary judgment motion, the moving party need not support its motion with affidavits or similar materials that negate the non-mover's claim(s) if they can otherwise show an absence of evidence supporting the non-mover's case. *Morris v. Oldham County Fiscal Court*,

201 F.3d 784, 788 (6th Cir. 2000). The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted); *see also, Arendate v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits

or as otherwise provided in this rule, must set forth specific facts showing
that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial--whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson*, 477 U.S. at 250.

## III.   ANALYSIS

### A.   Defendant Robert Wilkie's Motion to Strike

In support of her Opposition to Defendant's Motion for Summary Judgment, Plaintiff

attaches an unsworn and undated statement made by former coworker, Brandy Spring.[3] Plaintiff

presents the statement in support of her claims of continuous harassment at Defendant's Parma

facility and as proof Defendant had knowledge of the harassment. The statement is not notarized,

sworn, or dated. Plaintiff does not present the statement with context nor did Ms. Spring testify in

deposition or provide any sworn testimony in this matter. On June 14, 2019, Defendant moved to

exclude the statement from evidence. (ECF #28).

There are two ways in which a written statement may be used as testimony in summary

judgment proceedings. First, "[a]n affidavit used to support or oppose a motion for summary

judgment 'is required to be sworn to by the affiant in front of an 'officer authorized to administers

---

[3] The statement reads: "I Brandy spring have witness [sic] and was used as a pawn in the harassment of Donna Burnette at the Parma VA medical center. The pharmacy staff was very mean and I did not want the same harassment coming to me. I am glad I have left this site and would like to make amends with Donna. She has not done anything but be nice to me." ECF # 27-11.

oaths,' [...] and must be made on the affiant's personal knowledge." *Worthy v. Michigan Bell Tel. Co.,* 472 F. App'x 342, 343-44 (6th Cir. 2012), quoting *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 475 (6th Cir. 2002) and Fed. R. Civ. P. 56(c)(4). Alternatively, declarations may take the place of affidavits, under U.S.C. § 1746, so long as those declarations are made under penalty of perjury, certified as true and correct, dated, and signed. *Id.* Statements not sworn in one of these two ways are not competent summary judgment evidence. *Id., See also, Harris v. J.B. Robinson Jewelers,* 627 F.3d 235, 239 n. 1 (6th Cir. 2010).

Under Fed. R. Civ. P. 56(e), affidavits submitted in opposition to a summary judgment motion 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 968 (6th Cir. 1991) quoting *Monks v. General Elec. Co.,* 919 F.2d 1189, 1192 (6th Cir. 1990). "Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(E) and must be disregarded." *Id.,* quoting *State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir. 1979). Further, a court may not consider unsworn statements when ruling on a motion for summary judgment. *Id.* at 968-69, citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n.17 (1970); *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir. 1980).

Here, Ms. Spring's statement is not sworn in front of an officer authorized to administer oaths nor does it appear to have been made under penalty of perjury, certified as true and correct, or dated. Accordingly, the Court finds Ms. Spring's statement is inadmissible for purposes of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and excludes the statement from its consideration of the parties' briefings.

**B. Timeliness of Plaintiff's Claims Regarding Her Separation and Arising After 2014**

Title VII of the Civil Rights Act is the exclusive judicial remedy for claims of discrimination in federal employment. *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations." Id. (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown*, 425 U.S. at 833).

An employee must bring a claim of discrimination to an EEO counselor within 45 days of the alleged discriminatory conduct. *See* 29 C.F.R. § 1614.105(a)(1). If the matter can be resolved informally, the employee must file a formal complaint. *See* 29 C.F.R. §§ 1614.105(d), 1615.106(a), (b). If, after timely filing a formal complaint and proceeding through administrative process, the employee receives an adverse final determination, she may then either file suit in a federal court or request a hearing before the EEOC. An employee who chooses to file a federal suit must file a complaint within 90 days of receiving notice of the agency's final decision or, if an appeal has not been filed and the agency has not yet reached its decision, within 180 days after filing the administrative complaint. *See* 42 U.S.C. § 2000(e)-16(c); 29 C.F.R. §§ 1614.407(a), (b). Here, Plaintiff's claims stem from allegations made in two separately filed EEO Complaints, the May 2014 Complaint and the March 2017 complaint.

There is no dispute that Ms. Burnette failed to bring suit within 90 days of receiving a final agency decision and right to sue letter with respect to her March 2017 Complaint, as required by 42 U.S.C. §§ 2000e-5(f)(1), 2000e-16(c). Ms. Burnette contends, however, that her claims are entitled to application of the continuing violation doctrine. The Sixth Circuit has continually

recognized that, "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 376 (6th Cir. 2002). A plaintiff establishes a continuing violation if she produces evidence of a 'current' violation taking place within the limitations period, and then shows that the current violation is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period. *Id.* The violation occurring within the limitations period needs to be related to the time-barred acts to show that the acts are all part of the same discriminatory pattern. *Id.* at 377.

Here, the continuing violation doctrine does not excuse Plaintiff's failure to timely file suit as to her 2016, 2017, and constructive discharge claims. The Sixth Circuit has expressly held that "[t]he continuing-violation doctrine…does not relieve a plaintiff of the need to file an action within 90 days of receiving the right to sue letter." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001); *see also Shoemaker v. Mansfield City Sch. Dist. Bd. Of Educ.*, 61 F. Supp. 3d 704, 725 (N.D. Ohio 2014) (dismissing Title VII discrimination and retaliation claims as time-barred where plaintiff failed to file suit within 90 days of receiving the right to sue letter); *Austion v. City of Clarksville*, 244 F. App'x 639, 648-49 (6th Cir. 2007) (holding that continuing violation doctrine could not extend 90 day filing period and dismissing failure to promote claims).

Ms. Burnette's 2016 and 2017 allegations of constructive discharge and hostile work environment based on race and reprisal were first raised in her March 2017 Complaint. A final agency decision dismissed the March 2017 Complaint on January 23, 2018 and contained notice of Plaintiff's right to file a civil action within 90 days. Accordingly, Ms. Burnette was required to file suit no later than on or around April 23, 2018. Plaintiff did not file this action until May 22, 2018.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Lybarger v. Gates*, No. 1:10-CV-0373, 2012 WL 1095915, at *7 (N.D. Ohio March 30, 2012) (citing 42 U.S.C. 20003-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). Although a court may permit some claims to be raised heard in court even if they were not explicitly raised in the employee's EEO complaint, such claims must be charges that could "reasonably be expected to grow out of the EEOC charge" of discrimination. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

Ms. Burnette alleges that her mistreatment by colleagues occurred at Defendant's Brecksville site and continued after her transfer to the Parma facility. Further, she contends that all of her claims center around her mistreatment as the only African American employee at Defendant's Parma facility and the retaliation against her for raising complaints related to this alleged mistreatment. However, the incidents giving rise to Plaintiff's constructive discharge claims and the allegations contained in the March 2017 Complaint did not occur until after the investigation of her May 2014 Complaint was completed on August 10, 2014. Accordingly, Ms. Burnette's constructive discharge claim and 2016 allegations, including Mr. Severinski's alleged hostile behavior in 2016, cannot reasonably be expected to grow from a completed investigation in 2014. The Court agrees that Plaintiff's 2016 and 2017 allegations cannot reasonably be included in her 2014 Complaint as the investigation was completed in August 2014.

### C. Plaintiff's Race Discrimination Claim Fails as a Matter of Law

Title VII prohibits employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000 *et seq*. "It is well established that the burden is on an employment discrimination plaintiff to establish a prima facie case of discrimination." *Mitchell v. Toledo Hosp.*, 964 F.2d 577,

582 (6th Cir. 1992) (citations omitted). Plaintiff's race discrimination claim is premised on three allegedly adverse employment actions: (1) the robot incident; (2) her 14-day suspension; and (3) her AWOL on April 24, 2014 following the denial of her leave request.

### 1. *Prima Facie* Case

In the absence of direct evidence, as is the case here, a Title VII plaintiff may establish a *prima facie* case of discrimination by showing that she: (1) is a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for her position; and (4) was replaced by a person from outside her protected class, or received different treatment than employees outside of the protected class for the same or similar conduct. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted).

If plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decisions at issue. *McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973). Once defendant meets this burden, a plaintiff must then prove a defendant's reasons are a pretext for race discrimination. "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race." *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

#### a. Plaintiff Fails to Satisfy the Fourth Prong of Her *Prima Facie* Case for Race Discrimination

##### i. Plaintiff was Not Treated Less Favorably Than Someone Similarly Situated

Defendant concedes Ms. Burnette is a member of a protected class and does not dispute that her suspension and AWOL were adverse employment actions. Defendant does contest

Plaintiff's allegations that these decisions were made because of her race or that similarly situated individuals received more favorable treatment. Ms. Burnette contends that the facts and circumstances surrounding her treatment demonstrate that she was treated differently than similarly situated, non-protected employees on a consistent basis throughout her employment with Defendant. Specifically, Plaintiff contends she was similarly situated to Ms. Carrion because they both "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The Court disagrees.

Defendant employs a progressive discipline policy, whereby under the VA's Handbook Table of Penalties, the penalty for "disrespectful, insulting, abusive, insolent, or obscene language or conduct [...]" ranged from a reprimand for a first offense to a minimum 14-day suspension for a second offense. (Shihadeh Decl. ¶ 12). As evidenced in the record, Plaintiff has a disciplinary history. In 2004, Ms. Burnette received a suspension for unauthorized use of government mail and pharmacy equipment. In 2007, she received a 10-day suspension for her conduct towards another employee when she failed to assist a fellow technician. (Shihadeh Decl. ¶ 11). Plaintiff provides no evidence to contest Ms. Carrion's lack of disciplinary history, but rather alleges that she was the only one disciplined for the "robot incident." (Pltf.'s Br. at 10).

Defendant's actions against Plaintiff were informed by Ms. Burnette's disciplinary history. (Fuehrer Depo. at 19). Her suspension was in part based on Plaintiff's failure to follow the correct procedure and her response to being told how to correctly address the situation. (Proposed Suspension; Severinski Decl. ¶ 5(a)). Mr. Severinski testified that he counseled both Plaintiff and Ms. Carrion equally and explored the possibility of transferring both Plaintiff and Ms. Carrion to different locations. (Severinski Depo. 32; Severinski Decl. ¶ 10). Defendant also notes that despite

the many complaints received regarding Ms. Burnette's hostility in 2013 and 2014, Plaintiff only received discipline for the August and September 2013 incidents. (Severinski Depo. 66-67).

Regarding her attendance issues, Defendant contends Plaintiff was treated equally, if not more favorably. Defendant denied leave requests and charged AWOL to other employees when appropriate. (Severinski Decl. ¶ 3). Defendant permitted Plaintiff to use administrative leave to cover her tardiness several times, which the other pharmacy staff express was unfair to them. (Severinski Depo. 61-62). Plaintiff does not present any evidence to contradict these findings or raise a question as to whether her treatment was different. Further, the Court finds Plaintiff's reliance on *Williams v. PVACC, LLC* unpersuasive. There, plaintiff alleged she was terminated based on age, gender and race discrimination when a coworker with considerable disciplinary history was not. The Court in *Williams* found that the plaintiff's history of misconduct, which included insubordination and failure to perform job duties, among others, was more egregious than her colleague. *Williams v. PVACC, LLC*, No. 5:07-CV-3826, 2009 WL 10702749 (N.D. Ohio Jan. 16, 2009). Further still, even if Plaintiff and Ms. Carrion did engage in the same behavior, the Court agrees Ms. Burnette's disciplinary history differentiates her. Finally, Plaintiff's contention that she was unfairly punished for a pharmacy-wide problem is insufficient to establish a genuine issue of material fact as she fails to demonstrate how she was treated differently than similarly situated individuals.

### 2. Defendant Had Legitimate and Non-Discriminatory Reasons for Its Actions Against Plaintiff

Defendant contends Ms. Burnette's suspension was appropriate based on discrete incidents in connection with her disciplinary history, including verbal altercations and failure to perform her job responsibilities. (Proposed Suspension). An employer has a legitimate cause to discipline or terminate an employee who refuses to follow through on an employer's expressed directions.

*Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013); *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). In particular, Plaintiff engaged in a verbal altercation with Ms. Carrion over the ScriptPro robot, an incident where she admits she raised her voice. (Burnette Depo. 52-53). "Co-worker complaints regarding interpersonal skills constitute a legitimate, non-discriminatory reason for discipline..." *Parikh v. Cleveland Hardware & Forging Co.*, No. 1:04CV2363, 2006 WL 1515667, at *9 (N.D. Ohio May 26, 2006) (Vecchiarelli, M.J.). According to those who witnessed the incident, Ms. Carrion was upset because Plaintiff incorrectly used the robot. When Ms. Carrion and others in the pharmacy tried to correct Plaintiff, she escalated the conversation loud enough that a patient could hear. (Severinski Decl. ¶ 5). On other occasions, Plaintiff refused explicit requests to assist the acting pharmacist-in-charge with patients at the pharmacy window.

Plaintiff's job responsibilities included assisting pharmacists as requested and covering the window when necessary. (Shihadeh Decl. ¶¶ 9-10). Days before these incidents, Mr. Severinski had stressed to the pharmacy the importance of "situational awareness" and willingness to assist other staff. (Severinski Depo. 42; 49). Despite this knowledge, Plaintiff failed to complete her expected job duties. "An employee is not protected [by Title VII] when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989). Ms. Fuehrer's decision to suspend Plaintiff was based Plaintiff's responses to these incidents, the written documentation, Plaintiff's previous disciplinary history of similar conduct and informed by the VA's Table of Penalties, where deliberate refusal to carry out proper order... or willful resistance to the same is punishable by removal. (Fuehrer Depo. at 16-17; Shihadeh Decl.

¶ 12). *See, Adams v. Tenn. Dep't of Fin. & Admin*, 179 F. App'x 266, 274 (6th Cir. 2006) (inability to work with co-workers and insubordination are legitimate reasons for disciplinary actions).

With respect to Plaintiff's AWOL, Ms. Burnette concedes that it is a supervisor's prerogative to deny leave. (Burnette Depo. at 86). On April 24, 2014, Plaintiff requested leave after the work day already began. (Email 4-24-2014). At deposition, Mr. Severinski testified that he did not have adequate time to arrange coverage of the shift and thus denied the request based on staffing and volume. (Severinksi Depo. at 57). He testified further that the pharmacy was short-staffed that day and could not safely function without Plaintiff. (*Id.* at 59-60). Thus, Defendant had sufficient reason to deny Plaintiff's request. (Plaintiff's "responsibility at the time would be at her desk working on procurement but also kind of keeping an eye on the window, and I have always stressed to my people situational awareness – be aware of what's going on around you and be able to jump in and help out if necessary." (Severinski Depo. at 42).

Finally, Plaintiff provides no evidence beyond her own speculation that any of the alleged harassment or discrimination occurred because of her race. *See, Lovelace*, 252 F. App'x 33, 40-41 (6th Cir. 2007) ("Plaintiffs offer only their subjective beliefs that these incidents were racially motivated […] Such subjective and conclusory allegations are insufficient to create a genuine issue of material fact regarding whether the work environment was racially hostile in violation of Title VII as defined by *Harris*."). Ms. Burnette contends that Defendant turned a blind eye to her own complaints while punishing her because of her race. This allegation is unsupported by the record. While coworkers expressed a handful of concerns regarding Ms. Burnette, Defendant's adverse actions against Plaintiff were premised only on her failure to perform work responsibilities. Further, where incidents involved other employees, Defendant ensured an investigation was conducted and all parties were addressed. Thus, the Court agrees Ms. Burnette's allegations are

related to workplace conflict and not racially motivated discrimination, and thus her claim for race discrimination fails as a matter of law.

### 3. Prextext for Discrimination

Even assuming Plaintiff has met her *prima facie* burden, which she has not, Ms. Burnette can point to no evidence to support her contention that Defendant's reasons for her suspension and AWOL were pretext for discrimination. A plaintiff can prove pretext by showing that Defendant's stated reason: (1) has no basis in fact; (2) was not the defendant's actual motivation; or (3) was insufficient to explain the defendant's actions. *Seay v. TVA*, 339 F.3d 454, 463 (6th Cir. 2006) (internal citations omitted). In order to survive summary judgment, a plaintiff must produce evidence that would cause a jury to reasonably doubt the employer's explanation, and if successful, her *prima facie* case is sufficient to support an inference of discrimination at trial. *Jones*, 2015 U.S. Dist. LEXIS 28682 at 39-40).

Plaintiff contends that reports of harassment and discrimination appear to be taken seriously when made by other employees, however her continued pleas went unnoticed. (Burnette Depo. at 44-46; 98). Rather than Defendant taking appropriate action, she alleges that she was punished and silenced because of her race. Beyond her own subjective impressions, however, Plaintiff provides no evidence to suggest Defendant's justification for Ms. Burnette's suspension or AWOL are pretext for discrimination. Here, such unsupported speculation is not enough to create a triable issue on pretext. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).

### D. Plaintiff's Retaliation Claim Fails as a Matter of Law

Plaintiff's claim of retaliation is similarly deficient. Title VII prohibits retaliation based on an employee's opposition to unlawful employment practices or submitting or supporting a

complaint about discrimination. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60 (2013); *see* 42 U.S.C. § 2000e-3(a). In order to avoid summary judgment, a plaintiff must present evidence from which a reasonable jury could find that poor performance was not the real reason adverse employment action was taken, but rather, unlawful retaliation in fact was. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015).

### 1. *Prima Facie* **Case**

To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in activity that Title VII protects; (2) defendant knew that he engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *Abbot v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) *citing Strouss v. Michigan Dept. of Corr.*, 250F.3d 336, 342 (6th Cir. 2001). The fourth prong "requires proof of so-called 'but-for' causation, meaning that the plaintiff must furnish evidence that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Mys. v. Mich. Dep't of State Police*, 886 F.3d 591, 600 (6th Cir. 2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). Retaliation claims under Title VII supported by circumstance evidence, as is the case here, follow the *McDonnell Douglas* burden-shifting framework. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997).

### a. **Protected Activity**

Plaintiff alleges she engaged in the following protected activities:

    (1) Her critique and questioning regarding the lawfulness and propriety of Defendant's EEO policies and practices;
    (2) Her 2012 EEOC Complaint; and
    (3) Her 2013 complaints to Director Fuehrer. (Compl. ¶¶ 38-39).

To constitute protected activity, a complaint must be one that concerns discrimination made unlawful by Title VII, such as discrimination based on race, gender, religion or national origin. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516, 520 (6th Cir. 2009) (citing *Moore v. City of Philadelphia,* 461 F.3d 331, 341 (3d Cir. 2006). Under Title VII, there are two types of retaliation actions:

> "Participation" activity occurs when the protected activity involves making a charge, filing a complaint, testifying, or participating in an investigation or proceeding under Title VII. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). "Opposition" activity occurs when the employee is opposing a violation of Title VII. *Id.*

*McBroom v. Barnes & Noble Booksellers, Inc.*, 747 F. Supp.2d 906, 913 (N.D. Ohio 2010). Defendant concedes Plaintiff's 2012 Complaint is protected activity for purposes of her discrimination claim. However, Plaintiff fails to show how her various complaints to Ms. Fuehrer constitute protected activity under Title VII.

Plaintiff sent several emails to Ms. Fuehrer expressing her dissatisfaction with her work environment. She contends she informed her supervisors of race-based harassment such that these complaints constitute protected activity. However, her written communications to Ms. Fuehrer make no mention of race or address Plaintiff's alleged opposition to Defendant's EEOC policies and practices.[4] Further, none of Plaintiff's emails, complaints or testimony support a finding that

---

[4] Plaintiff's October 29, 2013 email entitled "harassment and bullying" states: "We have a problem in the parma cboc with Sybil carrion and Donna Burnette please address immediately. Thanks." (Ex. Q, Email 10-29-2013).

Plaintiff's November 25, 2013 email entitled "harassment" states: "Mrs. Fuehrer, I have over a year complaints on co-worker Sibyl Carrion. We both work at the Parma CBOC in Pharmacy. She is still harassing me on a daily basis. The supervisors have issued employee responsibility and conduct rules but she choose not to adhere to the rules. I fear this will get even worst [sic] because she has not been held accountable for her actions. Under medical center policy 005-024 it states, an employee who violates established conduct requirements may be subject to appropriate

her suspension, AWOL, or alleged mistreatment were based on her race or reprisal under Title VII. Accordingly, Ms. Burnette fails to demonstrate how her emails expressing opposition to Defendant's practices constitute protected activity for purposes of her retaliation claim.

### b. Plaintiff Cannot Establish the Causal Connection Requirement of a Retaliation Claim

Causation is shown when the evidence is "sufficient to raise the inference that protected activity was the likely reason for the adverse action." *Kurtz v. McHugh*, 423 Fed. Appx. 572, 578 (6th Cir. 2011) (citations omitted). At this stage, Plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had she not filed a discrimination action." *Motley v. Ohio Civil Rights Comm'n*, No. 07AP-923, 2008 Ohio 2306 (10th App. Dist. May 13, 2018). "If the evidence indicates that an employer 'would have made the same employment decision regardless of the employee's participation in the protected activity, the employee cannot prevail." *Motley*, 2008 Ohio 2306 at ¶ 11; *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Here, Plaintiff has not produced any evidence of a causal connection between her protected activity and any alleged adverse employment actions on behalf of the VA. Plaintiff alleges, but cannot demonstrate, that her supervisor was aware of her protected activity prior to the filing of her 2014 Complaint. Mr. Severinski did not supervise Plaintiff and had limited interactions with her until their employment together at Parma in 2012. (Severinski Depo. 10-11). Mr. Severinski testified that Plaintiff did not express dissatisfaction with her work environment prior to the Parma

---

disciplinary, adverse, or major adverse action. Management is committed to enforcement of conduct requirements. Please have my supervisors enforce the rule and this behavior will stop. Sincerely." (Ex. S, Email to Fuehrer).

facility and noted he was unaware of Plaintiff's EEO history until her filing of the 2014 Complaint. (*Id*. at 10-12; 69).

Also absent from the record is any evidence to support a finding that her AWOL or suspension were retaliatory. Rather, the evidence shows that any discipline issued to Plaintiff was directly attributable to her failure to perform her job duties and comply with Defendant's procedures. First, Mr. Severinski testified that he did not have any knowledge of Plaintiff's prior EEO activity and wanted the Parma facility to start with a clean slate. (Severinski Depo. at 12, 69). Second, even if Defendant did have knowledge, Plaintiff provides no evidence to support a finding that her suspension or AWOL were taken in retaliation to her protected activity. Ms. Burnette argues that a reasonable jury looking at the facts surrounding the events could certainly conclude that her "poor performance" was not the ultimate reason for Defendant's adverse employment action. She argues further that many of her complaints were brushed off and that she received continued discipline for voicing opposition to the alleged harassment. (Severinski Depo. at 66).

With respect to her AWOL, Severinski testified that the decision to deny Plaintiff's leave request was made based on the staffing needs of the pharmacy. With respect to her 14-day suspension, Defendant contends the decision was premised on three different events: (1) Plaintiff's August 2015 altercation with Ms. Carrion; (2) Plaintiff's failure to assist pharmacist Stircula; and (3) Plaintiff's refusal to assist pharmacist Stutler. (Severinski Decl. ¶ 5(a)). As provided in her function statement, Plaintiff knew her job responsibilities included assisting pharmacists at the pharmacy window upon request. (Shihadeh Decl. ¶ 9-10).

Here, Ms. Burnette's failure to provide assistance on a particularly busy day constituted a failure to perform her duties. Further, her altercation with Carrion regarding the robot caused a disturbance to the pharmacy, including patients. Ms. Burnette's conduct constitutes a failure to

perform her duties and the record is void of any evidence linking Plaintiff's discipline to her EEOC filing or other alleged protected activity. Accordingly, Plaintiff cannot prove the elements to establish a *prima facie* case of retaliation. Further, even if she could, Defendant had legitimate and non-discriminatory reasons for each decision made with respect to Plaintiff, for which Ms. Burnette cannot demonstrate to be pretext for retaliation. For these reasons, Plaintiff's retaliation claim fails as a matter of law.

### E. Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law

Ms. Burnette alleges she was subjected to a hostile work environment on the basis of race in violation of Title VII. A hostile work environment, actionable under Title VII, exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 791-92 (6th Cir. 2000). In order to establish a *prima facie* case of hostile work environment, a plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment as based upon the employee's protected status; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take any corrective or preventative actions. *Woods v. FacilitySource, LLC*, 640 Fed. Appx. 478, 490 (6th Cir. 2016).

#### 1. *Prima Facie* Case

##### a. Objectively Severe and Pervasive Harassment

Ms. Burnette contends that the hostile and harassing environment followed her from Defendant's Brecksville site to Parma, and ultimately forced her to retire in 2017. In order to

prevail, Ms. Burnette must show that the working environment at the VA "was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Id.; citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993). The hostile conduct must be more than "a mere offensive utterance," it must be severe and pervasive to rise to the level of an objectively hostile work environment. *Ault v. Oberlin Coll.*, 620 F.App'x 395, 399-400 (6th Cir. 2015). Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the discriminatory conduct is physically threatening or humiliating, or a mere offensive utterance; (4) whether the discriminatory conduct interferes with an employee's work performance; and (5) whether the plaintiff actually found the environment abusive. *Allen v. Ohio Dept. of Job and Fam. Servs.*, 697 F. Supp. 2d 854, 900 (S.D. Ohio 2010).

Defendant contends that Ms. Burnette's allegations do not rise to the level of severe and pervasive harassment necessary for a hostile work environment claim. Rather, Defendant argues Plaintiff's allegations are premised on interpersonal conflicts and ordinary workplace disagreements. To assess whether alleged harassment creates an objectively hostile environment, a court must consider the totality of the circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance..." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting

*Harris*, 510 U.S. at 23). The "conduct in question must be judged by both an objective and a subjective standard: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (citations omitted). Thus, Plaintiff must demonstrate that the work environment was both objectively and subjectively hostile, considering the totality of the circumstances.

Ms. Burnette alleges that her mistreatment, including nitpicking and "daily taunting," was an issue prior to her transfer to the Parma facility and continued thereafter. (Severinski Depo. 13-16; Burnette Depo. 94-97). She contends the pharmacists and staff continually disrespected her and Ms. Carrion intended to sabotage her work. During deposition, Ms. Burnette testified during that she informed Mr. Severinksi on numerous occasions of the hostile work environment at the Brecksville site and that the same environment followed her to the Parma site with the transfer of those same colleagues. (*Id.*). Plaintiff alleges the harassment escalated to the point where she felt compelled to request a transfer to Defendant's Akron facility in April of 2013. (*Id.*).

While there is no question that Plaintiff believes she was the target of racial discrimination and retaliation, Plaintiff does not identify evidence in the record to support the contention that any harassment as objectively severe or pervasive, or that any alleged mistreatment was premised on her race or protected activity. Plaintiff's most severe allegations, including those against Ms. Carrion and her intent to sabotage Plaintiff's work, are unsubstantiated. (Severinski Depo. at 38). Isolated incidents of alleged harassment do not create a hostile work environment, as they do not create a workplace atmosphere that is "both objectively and subjectively offensive." *Lovelace v. BP Prods. N. Am., Inc.*, 252 Fed. Appx. 33, 41 (6th Cir. 2007). Other allegations, including the slamming of the prescription, being bumped into, and leaving trash on a table, amount only to

annoyances and are similarly insufficient to constitute an objectively hostile work environment. *See, e.g., Willey v. Slater,* 20 F. App'x 404, 405 (6th Cir. 2001). Finally, Plaintiff's allegations regarding disputes or workplace procedure, such as disagreements regarding how to reorder or replace medications, even considered in whole, do not rise to the level of severe and pervasive harassment necessary to sustain Plaintiff's claim.

Ms. Burnette was informed of her responsibilities and obligations to assist pharmacy staff and many of the issues that arose concerned a difference of opinion over procedure. As is the case here, rumors, conclusory allegations and subjective belief are wholly insufficient evidence to establish a claim of discrimination, as a matter of law. *See Mitchell,* 964 F.2d at 585 (6th Cir. 1992) (citations omitted). This Court agrees Plaintiff's subjective complaints of disrespect and nitpicking are little more than interpersonal conflicts and thus are insufficient to establish a *prima facie* case of hostile work environment. *See, e.g. McDaniel v. Wilkie,* No. 17CV91, 2019 WL 626547, at *4 (N.D. Ohio Feb. 14 2019). Finally, Plaintiff's allegations that she was forced to transfer out twice from the Parma pharmacy in order to escape hostility to not support her hostile work environment claim. Plaintiff declined an offer to transfer to the Canton facility and voluntarily returned to the Parma pharmacy after working as a medical support assistant for six months. (Burnette Depo. at 32-34).

### b. Employer Liability

Defendant took appropriate steps in response to Plaintiff's allegations. Plaintiff provided testimony that she reminded Mr. Severinski and Mr. Maurer of the alleged abusive work environment. (Severinski Depo. 13-16; Burnette Depo. 94-97). Plaintiff eventually emailed Ms. Fuehrer on October 29, 2013 regarding the harassment. (Burnette Depo. 102-03). Plaintiff sent another email to Ms. Fuehrer on November 23, 2013. (*Id.* 105-06). At this time, Plaintiff contends

Ms. Carrion's harassment continued after the robot incident, including bumping in her in the aisles and causing interference with her work. (*Id.* 45).

During his deposition, Mr. Severinski testified that when people under his supervision had a conflict, he would discuss the issue with everyone involved. (Severinski Depo. at 20). After the robot incident, Mr. Severinski interviewed Plaintiff, Ms. Carrion, and all employees present at the time of the incident. He also had the everyone document what they witnessed. (*Id.* at 30, 34-35). Mr. Severinski presented the ROCs to Plaintiff and Ms. Carrion and counseled them separately. (*Id.* at 32). Similarly, after the September 2013 incidents, Mr. Severenski conducted an investigation and reported his findings to human resources. (Severinski Depo. at 58; Severinski Decl. ¶¶ 6-8). Finally, Mr. Severenski regularly held staff meetings in order to clarify Defendant's expectations and responsibilities for all pharmacy staff and to address any specific issues or concerns. (Severinski Depo. at 55-56). During these meetings, Plaintiff was reminded of her responsibility to "voluntarily jump in when needed" not only during lunch periods, but whenever a need arose. (Severinski Decl. ¶ 9). Mr. Severinski acknowledged Plaintiff's explanation that she had been unable to hear certain requests and noted that Plaintiff had a responsibility to fill prescriptions when they printed. (*Id.* at 10).

With respect to the animosity between Plaintiff and Ms. Carrion, Mr. Severeinski and Mr. Maurer explored the possibility of transferring both employees to avoid any implication of favoritism. (*Id.* at 10). Meetings were conducted with both employees, and both employees were advised if appropriate workplace behavior and potential consequences for failure to conduct themselves appropriately. (Severinski Depo. at 37). Finally, when Plaintiff complained of Ms. Carrion's behavior following an alleged incident in the VA parking lot, VA police reviewed footage and investigated the incident, but did not find any evidence of wrongdoing. (*Id.* at 38).

### c. **Race-Based Discrimination**

Finally, Plaintiff fails to establish that any alleged harassment, even if severe or pervasive enough to constitute a hostile work environment, was based on her race or in retaliation to her protected activity. *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342-43 (6th Cir. 1998) (plaintiff could not establish a *prima facie* case where conflict was the result of personal dislike rather than discriminatory animus). Her subjective belief that any alleged harassment or retaliation occurred because of her race or EEO activity is unfounded and in contradiction to Defendant's well-documented history of Plaintiff's insubordination and failure to perform her job responsibilities. Accordingly, Plaintiff's hostile work environment claim fails as a matter of law and Defendant is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF #26) is hereby GRANTED.

IT IS SO ORDERED.

DONALD C. NUGENT
Senior United States District Judge

DATED: _September 17, 2019_